IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARLENA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 5256 |
| | ) | |
| THE ILLINOIS STATE TOLL | ) | |
| HIGHWAY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

Plaintiff Marlena Jones, an African-American woman, is a former

employee of defendant Illinois State Toll Highway Authority ("ISTHA"). She

worked as a Collector in Charge ("CIC") and was discharged after she placed

$40.00 in her shirt pocket when there was an incorrect $40.00 overcount. Plaintiff

alleges she was discharged because of racial discrimination in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]  ISTHA

moves for summary judgment on the Title VII claim.

---

[1]Previously, a 42 U.S.C. § 1983 claim against supervisory ISTHA
employees was voluntarily dismissed with prejudice and without costs or fees.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 129 S. Ct. 846, 849 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95

(7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

***Outlaw***, 259 F.3d at 837.

The burden is on plaintiff to present sufficient evidence to support a genuine factual dispute that she was discharged because of her race. Under the indirect method, burden-shifting approach generally applied in analyzing summary judgment motions as to discrimination claims, a *prima facie* case of employment discrimination creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, the plaintiff must then show that the articulated reason is pretextual. ***Davis v. Con-Way Transp. Cent. Express, Inc.***, 368 F.3d 776, 784 (7th Cir. 2004). The parties agree that, in the present case, appropriate elements for establishing a *prima facie* case of discrimination are: (1) plaintiff is a member of a protected class (African-American); (2) she was meeting ISTHA's legitimate expectations; (3) she suffered

an adverse employment action (discharge); and (4) similarly situated employees who were not African-American were treated more favorably. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010). The parties agree the first and third elements are satisfied. Defendant contends the other two elements are not satisfied. Plaintiff does not dispute that there was an apparent overage and that she placed the $40.00 in her shirt pocket, but contends that it was not a dischargeable offense. She contends her race motivated Plaza Manager Judy Parks to initiate discharge proceedings. In that situation, the second and fourth elements merge and plaintiff must provide evidence supporting that she was disciplined more harshly than similarly situated non-African-American employees who engaged in similar misconduct. *Naik*, 627 F.3d at 600-01; *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009); *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007); *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846-47 (7th Cir. 2007).[2]

ISTHA toll plazas generally have a Plaza Manager who works from early morning until early afternoon and a supervisor who works early afternoon

---

[2]Since defendant raises an issue of plaintiff failing to meet its legitimate expectations, the issue of pretext may also merge with the *prima facie* case. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477-78 (7th Cir. 2010).

into the evening. During the overnight hours or when neither a plaza manager or the first supervisor is on duty, a second supervisor or a CIC is on duty. Toll collectors work inside the tollbooth collecting tolls. A toll collector's duties include collecting the proper toll; depositing toll collections at the end of the shift; returning the $250 given to the collector by a CIC at the beginning of the shift for use as change; and writing reports when a customer does not have money to pay. The duties of a CIC include: making sure the toll booths are staffed; assembling "banks" ($250 of change from the plaza's safe) for each toll collector; ensuring return of each collector's bank; ensuring deposit of each collector's collected tolls into the plaza's safe; and balancing the safe at the end of the CIC's shift and recording such information on standard form TC-12. When there is an overage, a TC-42 must be completed and the extra funds are kept in a separate bag in the safe.

On May 27, 2007, from 6:30 p.m. until 10:00 p.m., plaintiff was on duty as the CIC at Plaza 39. At the end of her shift, she proceeded to balance the safe and prepare a TC-12 for incoming CIC Michelle Bolek. Plaintiff miscounted the money in the safe and incorrectly believed she had a $40.00 overage. Plaintiff placed four ten-dollar bills in the breast pocket of her shirt. The pocket was open.

Plaintiff testifies that she told Bolek about the overage and Bolek then determined

that the apparent $40.00 discrepancy was because there were only 602 rolls of

dimes, not 610 as plaintiff had recorded. Break person[3] Chester Miller was also

present while Bolek counted the safe money. It is uncontested that plaintiff did

not pull the bills out of her pocket until after Bolek discovered the discrepancy

with the dimes. Bolek testified that plaintiff made no mention of an overage until

after Bolek discovered the discrepancy with the dimes. For purposes of summary

judgment, plaintiff's testimony that she told Bolek about the discrepancy would

have to be credited even though Bolek testified to the contrary. But whether

plaintiff actually told Bolek before Bolek discovered a discrepancy is not

necessarily a material fact. It is undisputed that Bolek orally reported the incident

to Parks who asked Bolek to provide a written report. In her written

memorandum, Bolek stated:

> When I relieved the afternoon CIC on 5/27/07, I
> started to count the safe. I noticed a discrepancy on the
> receipt for the safe. Marlena had listed the dimes as 610 rolls
> and there were only 602 rolls. When I pointed that out to
> her, she pulled 4 tens out of her shirt pocket and said, "Oh,
> Yeah, that's where it is." She then stated that the safe did not
> balance correctly and she was going to have me find the

---

[3]The parties do not say, but presumably a break person fills in while the
regular toll collectors take breaks.

problem. She said that if she was indeed the 4 tens over (that were in her pocket) she would have written it up and dropped it. I was not notified before starting to balance that there was a problem with the safe. I had to find out on my own.

Bolek also mentioned that the break person was present during this incident. There is no evidence that Bolek has ever retracted her statement that plaintiff did not mention any overage until Bolek first brought up the dime-roll discrepancy.

Parks relieved plaintiff of her duties and reported the incident to a superior.[4] The incident was referred to the Inspector General who conducted an investigation. Both plaintiff and Bolek were interviewed by an investigator. Plaintiff admitted that her TC-12 had not mentioned an overage and that the money was in her shirt pocket. Bolek again stated that plaintiff said nothing about the money in her pocket or an overage until Bolek mentioned the dime rolls had been miscounted. The investigator concluded plaintiff "took money belonging to the Tollway and falsely reported in her TC-12 amounts that concealed this fact

_____

[4]Neither party attempts to explain lines of authority or disciplinary responsibility at ISTHA. The record contains a May 29, 2007 email that Parks sent to Michael Doyle with a copy to Vince Volante. According to his affidavit, which primarily addresses discipline of a possible comparable, as of 2007 Doyle was a District Supervisor in the Toll Operations department. One document indicates that, as of January 2006, Volante was the General Manager of Toll Services. Plaintiff's July 30, 2007 letter of discharge is signed by Tracy E. Smith, Chief of Administration.

thereby attempting to permanently deprive the Tollway of these funds."[5]  Plaintiff
was thereafter discharged.

The issue is not whether plaintiff actually intended to keep the $40.00,
but whether her discharge was motivated by racial discrimination.  Plaintiff
focuses on Parks as being the one who had the discriminatory animus.  To make
out her *prima facie* case, plaintiff must provide evidence supporting that Parks
treated a similarly situated non-African-American more favorably.  In order to be
similarly situated, the other employee must be comparable in all material respects,
which generally includes that plaintiff and the comparator had the same type of
job, were subject to the same standards, had comparable experience and
qualifications, engaged in similar misconduct, and had the same supervisors.
*Bodenstab v. Cty. of Cook*, 569 F.3d 651, 657 n.2 (7th Cir. 2009).  The "'similarly-
situated' . . . test involves a flexible, common-sense approach with requirements
that vary from case to case.  Regardless of the context, however, the purpose of the
test remains the same:  to discern whether there are sufficient common factors

---

[5]The first page of a memorandum addressed from the Inspector General
to the Chief of Administration is provided, but not the remainder of this document.
It is unknown whether the investigator and/or the Inspector General made any
recommendation regarding a discharge or simply reported the conclusion that
plaintiff was attempting to steal the money.

between the plaintiff and another employee to allow for a meaningful comparison in order to divine whether discrimination was involved in an employment decision." ***McGowan v. Deere & Co.***, 581 F.3d 575, 579-80 (7th Cir. 2009).

Plaintiff points to a White female toll collector as being treated more favorably. Volante suspended the toll collector for three days; she was not discharged. Four days after it happened, the toll collector found $40.00 in her pocket and returned it. There is no finding that she returned it only after it was otherwise reported or discovered that $40.00 was missing. There is no evidence that Parks was this employee's supervisor nor otherwise involved in the decision to discipline her. So this cannot be evidence supporting that Parks acted with a discriminatory animus. Volante was the one who suspended the toll collector. Plaintiff does not present evidence establishing Volante's role in plaintiff's discipline. ISTHA contends it is inappropriate to compare discipline of a toll collector with discipline of a CIC. As defendant points out, they do have differing job duties, but it is not clear that those differences are necessarily material if both intentionally took $40.00. Defendant also contents there is the key difference in that, unlike for toll collectors, ISTHA rules mandate that a CIC who pockets toll plaza funds be discharged. That would be a difference that precludes the toll

collector from being an appropriate comparator. Defendant, however, simply asserts in its brief that such a rule exists but points to no evidence that such a rule exists nor does it cite a specific rule or regulation to that effect.[6] In any event, the toll collector position is not similar in all material respects. Plaintiff was found to have intended to steal the money and the findings before the Chief Administrator was that she did not reveal having the money until after another employee reported a discrepancy. The findings on which the comparator toll collector was disciplined are that she voluntarily returned the money without it first being discovered to be missing and was disciplined for failure to discover or report a shortage, not for intending to steal the money. Plaintiff was found to have committed a more serious infraction and different decisionmakers apparently made the final decisions to discipline plaintiff and the toll collector.

Plaintiff also points to Parks's deposition testimony that there have been problems with CICs balancing the bank, but not all such incidents resulted in the CIC being discharged. Parks was not asked to specifically identify any of these

---

[6]Evidence supports that a CIC, although in the bargaining unit, is in a semi-supervisory role. Also, a CIC has access to the safe for the entire plaza, and evidence supports it contains $10,000 or more. Toll collectors just have access to their individual cash drawers. These would be reasons to treat a CIC's violation more seriously, but there is no evidence ISTHA actually has such a policy.

incidents or describe them in any detail whatsoever. This testimony is insufficient to establish that any of these unidentified CICs were similarly situated. It is not established whether the other CICs were of a different race nor whether any were found to have been attempting to steal funds.

Plaintiff points to evidence that a number of employees, including plaintiff herself, had previously accused Parks of discriminating against African-Americans. Such hearsay does not establish that Parks actually discriminated in the past nor does it establish that Parks discriminated regarding plaintiff's discharge. All it establishes is that Parks was aware of such allegations. Plaintiff does not contend that she was subjected to retaliation for a prior accusation and, even if she were seeking to raise such an accusation, she does not point to similarly situated persons who had not accused Parks of discrimination and were treated more favorably.

Plaintiff also points to the fact that neither Parks nor the investigator interviewed Miller, who was present when Bolek was counting the money. She also points to evidence that the investigator was not aware of the procedures applicable to CICs balancing the funds. Even if the evidence is sufficient to conclude that there were deficiencies in the investigation of the accusations

against plaintiff, there would have to be evidence supporting it was racially motivated. There is no evidence that a similarly situated non-African-American was provided a more thorough or competent investigation.

Plaintiff fails to provide evidence supporting the inference that she was discharged because of her race. Defendant is entitled to summary judgment dismissing the remaining claim.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [31] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: JULY   |  , 2011